IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD C. MAINES, JAMES R. MALLES, ) <br> and SCOTT J. RECTOR, ) <br>         Plaintiffs    ) <br>                    ) <br>         v.                  ) <br>                    ) <br> GOVERNOR OF PENNSYLVANIA ED ) <br> RENDELL, or his successor, et al., ) <br>         Defendants. ) | C.A. No. 11-70 Erie <br><br><br> Magistrate Judge Baxter |

**OPINION AND ORDER**[1]

United States Magistrate Judge Susan Paradise Baxter

**I.      INTRODUCTION**

      **A.**      **Relevant Procedural and Factual History**

On March 25, 2011, Plaintiffs Leonard C. Maines, James R. Malles, and Scott J. Rector, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are: Governor of Pennsylvania Ed Rendell, or his successor ("Governor"); Attorney General Thomas Corbett, or his successor ("Attorney General"); Department of Corrections Secretary Jeffrey Beard, or his successor ("DOC Secretary"); General Assembly of the Commonwealth of Pennsylvania ("General Assembly"); and Michael W. Curley, Warden at the Muskegon Correctional Facility in Muskegon, Michigan ("Curley"). For convenience, Defendants Governor, Attorney General, and DOC Secretary will be referred to collectively as "Commonwealth Defendants."

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge. [ECF Nos. 5, 6, 7, 36, 39].

Plaintiffs claim that their transfer from a state correctional facility in Pennsylvania to a state correctional facility in Michigan violated their "rights to Due Process, Equal Protection, Access of the Courts, Cruel and Unusual Punishment, and crimes under the state and federal laws." (ECF No. 18, Complaint, at Section V). In particular, Plaintiffs challenge their transfer from SCI-Albion to the Muskegon Correctional Facility in Muskegon, Michigan ("Muskegon") on February 17, 2010, and their subsequent confinement at Muskegon from February 17, 2010 to May 25, 2011, when they were returned to SCI-Albion. The transfer was effectuated pursuant to the Interstate Corrections Compact, 61 Pa.C.S. § 7101, *et seq.*, which was enacted to allow the transfer of inmates from a Pennsylvania state correctional facility to a correctional facility in another state, on a temporary basis, to help alleviate overcrowding in the Pennsylvania facility. As relief for their claims, Plaintiffs "request release from their unlawful and unconstitutional imprisonment in the State of Michigan and paid from the time they were illegally detained in Michigan until the day they are released from their unlawful imprisonment." (Id. at Section VI).[2]

On August 2, 2011, Defendants Governor, Attorney General, and DOC Secretary filed a motion to dismiss complaint [ECF No. 29], asserting that Plaintiffs have failed to state a claim upon which relief may be granted. On the same date, Defendant General Assembly filed its own motion to dismiss [ECF No. 31], arguing that Plaintiffs' claims against it are barred by legislative immunity, Eleventh Amendment immunity, and/or sovereign immunity, and fail to state a claim upon which relief may be granted in any event. On August 24, 2011, Defendant Curley filed his own motion to dismiss complaint [ECF No. 35], joining and incorporating by reference the Commonwealth Defendants' motion to dismiss. On September 16, 2011, Plaintiffs filed an

---

[2] Plaintiffs have since been returned to SCI-Albion and, thus, their request for injunctive relief in the form of an order releasing them from their imprisonment in the State of Michigan has been rendered moot.

"answer" to Defendants' motions to dismiss. [ECF No. 41]. This matter is now ripe for consideration.

### B.  Standards of Review

#### 1.  Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax

and sentence construction, or litigant's unfamiliarity with pleading requirements.  See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Enforceability of Interstate Corrections Compact

Although Plaintiffs raise a number of constitutional claims, it appears that the crux of their complaint is that they were transferred out of state pursuant to a law – the Interstate Corrections Compact, 61 Pa.C.S.A. § 7101 ('the Compact") – that was allegedly enacted without the "Constitutional Enacting Clause." (See ECF No. 41, Plaintiffs' "Answer to Defendants' Request to Dismiss").  As a result, Plaintiffs claim that the Compact is invalid and, thus, their transfer constituted an illegal kidnaping and/or extradition.  This claim is without merit.

Plaintiffs allege that the Compact "fails to show an enacting clause on its face to show that it is a Legal Law...." (ECF No. 41 at p. 8).  The enacting clause to which Plaintiffs refer is set forth in 1 Pa.C.S.A. § 1101(a), which provides that "[a]ll statutes shall begin in the following style, 'The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows.'" Contrary to Plaintiffs' assertions, however, both the Compact's underlying Senate Bill – Senate Bill112 – and the resultant Act passed by then Governor Ed Rendell on August 11, 2009 – Act

No. 2009-33 – included the enacting clause required by 1 Pa.C.S.A. § 1101(a). (See ECF No. 29-2, Senate Bill 112 (excerpt), at pp. 13-14 (internal pp. 10-11); ECF No. 29-2, Act No. 2009-33 (excerpt), at p. 27 (internal p. 12)). Thus, Plaintiffs' challenge to the validity of the Compact upon which their transfers were based is unfounded and will be dismissed.

### 2. **Legislative Immunity**

Defendant General Assembly has moved to dismiss Plaintiffs' claims against it based on the doctrine of absolute legislative immunity. The Supreme Court has held that state legislators are entitled to "absolute immunity" from suit under § 1983 for their legislative activities. See Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998); Fowler-Nash v. Democratic Caucus of Pa. House of Representatives, 469 F.3d 328, 331 (3d Cir. 2006). "The scope of state legislators' immunity is 'coterminous' with the absolute immunity afforded to members of Congress under the Speech and Debate Clause." Youngblood v. DeWeese, 352 F.3d 836, 839 (3d Cir. 2003), quoting Larsen v. Senate of the Commonwealth of Pa., 152 F.3d 240, 249 (3d Cir. 1998). Such absolute legislative immunity attaches broadly to all actions taken "in the sphere of legitimate legislative activity." Bogan, 523 U.S. at 54, citing Tenney v. Brandhove, 341 U.S. 367, 376 (1981).

Here, Plaintiffs challenge the manner in which Defendant General Assembly ratified the Compact by legislative enactment. Such a challenge clearly implicates "legitimate legislative activity," and is barred by the doctrine of absolute legislative immunity. Thus, Plaintiffs' claims against Defendant General Assembly will be dismissed, and Plaintiffs' remaining constitutional claims will be considered only to the extent they are asserted against the Commonwealth Defendants and Defendant Curley.

### 3. **Fourteenth Amendment Due Process Claim**

Plaintiffs assert that their Fourteenth Amendment procedural due process rights were

violated when they were transferred from SCI-Albion to Muskegon. Both the Commonwealth Defendants and Defendant Curley argue that such claim should be dismissed because Plaintiffs do not have a liberty interest in being confined at any particular prison. The Court agrees.

To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels v. Williams, 474 U.S. 327, 339 (1986). If a person does not have a constitutionally-protected interest, he is not entitled to the procedural protections afforded by the Due Process Clause.[3]

It is well-settled that an inmate has no federal liberty interest guaranteeing that he remain in a particular prison, or preventing his transfer to another correctional facility, either within the same state or interstate. Olim v. Wakinekona, 461 U.S. 238, 247 (1983); Beshaw v. Fenton, 635 F.2d 239 (3d Cir.1980), cert. denied, 453 U.S. 912 (1981). "Through the authorization conferred by 18 U.S.C. § 4082, the Attorney General may transfer a prisoner from one place of confinement to any available and appropriate facility." Ingraham v. Federal Bureau of Prisons, 1987 WL 16886 at *1 (E.D.Pa. Sept. 9, 1987). In particular, the Supreme Court in Okim recognized that

> [j]ust as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State....
>
> ... it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State. Confinement in another State, unlike confinement in a mental institution, is 'within the normal limits or range of custody which the conviction has authorized the State to

---

[3] If a liberty interest is found, the next step in the due process inquiry is to determine what process is due. "Due process ... is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). At a minimum, due process requires notice and the opportunity to be heard. Paul v. Davis, 424 U.S. 693, 724 (1976) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

impose.'

Okim, 461 U.S. at 245-248.

Since no liberty interest has been invoked, Plaintiffs' Fourteenth Amendment due process claim will be dismissed.

### 4. Eighth Amendment Claim

Plaintiffs allege that their transfer from SCI-Albion to Muskegon, and their subsequent confinement at Muskegon for approximately 15 months, constituted cruel and unusual punishment in violation of their Eighth Amendment rights.

To succeed on an Eighth Amendment claim, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994)  An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, clothing, shelter, and medical care.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety").  Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference.  Farmer, 511 U.S. at 837.

Here, Plaintiffs have not alleged that they were denied the "minimal civilized measure of life's necessities," nor have they alleged that they suffered any tangible physical or psychological harm as a result of their transfer to and confinement at Muskegon.  They simply complain that their transfer alone constituted cruel and unusual punishment.  This is insufficient

to state an Eighth Amendment claim. Accordingly, such claim will be dismissed.

### 5. Access of the Courts

Plaintiffs generally allege that their transfer to Muskegon denied them "access of the courts."

While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996).[4] The Lewis Court held that, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. Id. The plaintiff must show that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 356. The Third Circuit has further described the *Lewis* holding:

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

---

[4]

The Lewis Court opined:
> ...*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.

So, under *Lewis*, a plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). Here, Plaintiffs have alleged neither.

Accordingly, Plaintiffs' denial of access to courts claim will be dismissed.

### 6. Fourteenth Amendment Equal Protection Claim

Plaintiffs have also raised the generalized claim that their transfer to and confinement at Muskegon violated their right to equal protection under the Fourteenth Amendment.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996), quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994). As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class." Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).

Here, Plaintiffs have failed to allege any differential treatment between themselves and any specific group or class of similarly situated individuals. Thus, Plaintiffs have failed to meet the threshold requirement of stating an equal protection claim, and such claim will be dismissed accordingly.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD C. MAINES, JAMES R. MALLES, ) and SCOTT J. RECTOR, ) Plaintiffs ) ) v. ) ) GOVERNOR OF PENNSYLVANIA ED ) RENDELL, or his successor, et al., ) Defendants. ) | C.A. No. 11-70 Erie<br><br>Magistrate Judge Baxter |

## ORDER

AND NOW, this 9<u>th</u> day of December, 2011, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. The Commonwealth Defendants' motion to dismiss complaint [ECF No. 29] is GRANTED;

2. Defendant General Assembly's motion to dismiss [ECF No. 31] is GRANTED; and

3. Defendant Curley's motion to dismiss complaint [ECF No. 41] is GRANTED.

As a result of the foregoing, this case is DISMISSED. The Clerk is directed to mark this case closed.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge